IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

CARMEN JOHNSON

:

:

:   Criminal Case No. DKC 13-0294

:

:

**MEMORANDUM OPINION AND ORDER**

In March 2011, the government applied for a pre-indictment seizure warrant related to an ongoing investigation into a suspected wire fraud scheme involving Carmen Johnson ("Investigation"), submitting in support the affidavit of United States Secret Service Special Agent Ryan F. Myett. The affidavit recited that Johnson and an associate, Charles Parker, through Able Estate & Company, LLC ("Able Estate"), and CJ Lending, LLC ("CJ Lending"), offered to enhance the credit profiles of their customers in exchange for fees typically ranging from $1,200 to $2,400, which they deposited into five associated bank accounts ("the subject accounts").[1] These so-called "credit repair" services allegedly consisted of Johnson

---

[1] Four of the subject accounts were in the name of Able Estate and one was in the name of CJ Lending. Ms. Johnson was the sole member of Able Estate, "which was formed in Maryland in 2003, and then dissolved in July 2011." (ECF No. 157). She previously held a membership interest in CJ Lending, but transferred that interest to Mr. Parker in 2009. She has acknowledged that she no longer has an interest in the CJ Lending account.

and/or Parker falsely reporting to Experian, an international credit reporting agency, that Able Estate or CJ Lending had previously extended loans to the customers when, in fact, they had not, thereby creating the appearance that the customers were more creditworthy than they actually were.

According to the affidavit, documents provided by Experian revealed that CJ Lending "reported issuing over $14 million in credit or loans to approximately 1,000 [customers] between 2001 (prior to its existence) and 2008" and that Able Estate "reported issuing over $11 million in credit or loans to over 1,100 [customers] between 1997 (prior to its existence) and 2005." (ECF No. 101-1 ¶ 21). "A review of bank records related to all of the subject accounts," however, "revealed no evidence that the companies extended credit or loans to the end-users listed in the Experian [records] in any amounts, let alone the millions of dollars falsely reported to Experian." (*Id.*). Furthermore, "the dates and amounts of [customers'] checks that were deposited to the subject accounts d[id] not correspond to the purported dates that the credit or loans were extended . . . ; rather, they correspond[ed] to the dates that the information was submitted to Experian and to the fees that the [customers] were charged for credit enhancement." (*Id.*).[2]

---

[2] The affidavit recites that Special Agent Myett interviewed five customers of CJ Lending or Able Estate to whom the entities

2

Citing evidence that "over 2,000" CJ Lending and Able Estate customers "typically pa[id] $1,200, $1,600, or $2,400 for credit-enhancement" services, Special Agent Myett "conservatively estimated that Parker and Johnson ([d/b/a] CJ Lending and Able Estate) received upwards of $2,000,000.00 in proceeds" by submitting false reports to Experian. (*Id.* at ¶ 22). Further noting that the Investigation "revealed no evidence that CJ Lending and Able Estate . . . generated any legitimate earnings by lawfully extending loans or credit," he asserted, "there is probable cause to believe that any and all funds up to $2,000,000.00 in U.S. currency from the aforementioned bank accounts[] is forfeitable as substitute assets pursuant to 21 U.S.C. § 853(p) for the proceeds obtained for violations of 18 U.S.C. § 1343 (wire fraud)" (*id.* at ¶ 23), and advised that the government would be seeking a money judgment in that amount in a "forthcoming indictment" (*id.* at ¶ 4). The agent further averred, based on his training and experience, that pre-trial seizure of the funds was necessary because "restraining orders served on banks sometimes fail to

---

reported extending loans or credit in varying amounts to Experian. The customers each reported remitting a fee to CJ Lending or Able Estate for "credit-enhancement services" (ECF No. 101-1 ¶ 15) – in most cases, after meeting directly with Johnson or Parker – and that they never received a loan or extension of credit from those entities.

preserve the property for forfeiture," for a number of enumerated reasons. (*Id.* at ¶ 6).[3]

---

[3] Pursuant to 21 U.S.C. § 853(a)(1), upon conviction for certain offenses, including wire fraud, the defendant "shall forfeit to the United States, irrespective of any provision of State law . . . any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation[.]" Under § 853(f), the government "may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant," which "shall issue" upon a determination that there is "probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) [authorizing a restraining order or injunction] . . . may not be sufficient to assure the availability of the property for forfeiture[.]"

Section 853(p) permits the forfeiture of "substitute property" if any directly forfeitable property, "as a result of any act or omission of the defendant":

> (A) cannot be located upon the exercise of due diligence;
>
> (B) has been transferred or sold to, or deposited with, a third party;
>
> (C) has been placed beyond the jurisdiction of the court;
>
> (D) has been substantially diminished in value; or
>
> (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1). In the Fourth Circuit, substitute assets are subject to pre-indictment forfeiture. *See United States v. Wingerter*, 369 F.Supp.2d 799, 807 (E.D.Va. 2005) (citing *In re Billman*, 915 F.2d 916, 920 (4th Cir. 1990)).

United States Magistrate Judge Jillyn K. Schulze issued the warrant on March 23, 2011, authorizing the seizure of United States currency in an amount of up to $2 million from the subject accounts. The warrant was executed on March 28, 2011, and a total of $515,967.64 was seized.

On June 10, 2013, an indictment was filed in the instant case ("Indictment"), naming Ms. Johnson (hereinafter, "Defendant"), among a number of other defendants, in an alleged conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. A superseding indictment subsequently charged that the defendants conspired "to fraudulently secure residential mortgage loans funded by federally-insured financial institutions by causing materially false statements to be made during the loan application and approval process." (ECF No. 110, at 1-2). According to the superseding indictment, Defendant's role in the conspiracy consisted of seeking mortgages for certain properties "at values that were in excess of the properties' actual market values" (*id.* at ¶ 23); "ma[king] and caus[ing] to be made materially false and fraudulent misrepresentations on loan application documents to mortgage brokers, loan officers and lenders when applying for residential real estate mortgage loans" (*id.* at ¶ 24); "creat[ing], and caus[ing] to be created, materially false and fraudulent credit histories for the straw buyers through CJ

Lending in order to enhance the credit worthiness of the straw buyers" (*id*. at ¶ 25); "caus[ing] property settlements to occur for which [she] submitted documents that contained material false statements that were intended to deceive and did deceive the lenders" (*id*. at ¶ 28); sending closing packages to lenders containing "materially false, fictitious and misleading . . . loan applications and the HUD-1's" (*id*. at ¶ 29); and sharing in the proceeds from these transactions "as payment for [her] assistance in obtaining the fraudulent mortgage loans" (*id*. at ¶ 31). Like the initial indictment, the superseding indictment included a forfeiture allegation, which advised that the government would seek the forfeiture of "substitute assets" of "[a]t least $1,000,000 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is proceeds obtained, directly or indirectly, as a result of such violations." (*Id*. at 22).

Defendant filed the pending motion for return of property on December 19, 2013, seeking "the release of all funds the government seized . . . in March 2011 to allow her to pay for her legal defense as guaranteed under the Sixth Amendment to the United States Constitution." (ECF No. 100, at 1). Assuming that the "forthcoming" indictment referenced in Special Agent Myett's affidavit in the Investigation was the Indictment filed in this case, and noting that the $1 million forfeiture

allegation was considerably less than the $2 million amount authorized by the warrant, Defendant characterized her motion as relating to "'untainted' assets that the government hopes to forfeit as a substitute asset for other funds that allegedly were derived from the indicted activity and allegedly pocketed by other defendants." (*Id.* at 2). "Meanwhile," according to Defendant, "the ongoing restraint of these 'substitute' assets has impoverished [her] and will preclude her from retaining counsel[.]" (*Id.*). She argued that, "based on an incomplete and at times inaccurate *ex parte* presentation, the government has seized assets [that] the defendant needs for her defense, without any opportunity for her to be heard on the merits of [the] seizure[]." (*Id.* at 14). She requested "an evidentiary hearing through which she may challenge the seizure and pre-trial restraint . . . in this case." (*Id.* at 15).

In its response, dated February 5, 2014, the government asserted:

> Defendant mistakenly characterizes the pending indictment as the anticipated indictment referred to in the Special Agent's affidavit. In fact, the seizure relates directly to a continuing investigation much broader in scope than the eleven transactions referred to in this indictment.

(ECF No. 133, at 2 n. 1). In other words, the government clarified that the Investigation, pursuant to which the funds

were seized, related to different conduct than that charged in the Indictment. Nevertheless, it addressed the same legal standard proposed by Defendant – the framework set forth by the Fourth Circuit in *United States v. Farmer*, 274 F.3d 800 (4th Cir. 2001), applicable to a post-indictment criminal forfeiture proceeding – contending that Defendant was not entitled to a hearing because the declaration accompanying her motion was insufficient to show that she had no assets other than the restrained funds with which to pay her counsel, and that she had provided no "evidence or any bona fide reason to believe that the grand jury erred in finding probable cause[.]" (*Id.* at 9).

Defendant's reply, filed February 18, did little to resolve the apparent confusion. Despite recognizing the government's acknowledgment that the "March 2011 warrant had to do with a *separate* matter and ongoing investigation *related* to the above captioned case" (ECF No. 148, at 1 (emphasis in original; internal marks omitted)), Defendant argued that "not a single fact is offered . . . to suggest that one dime of the funds Special Agent Myett seized from Ms. Johnson's bank accounts in 2011 could be traced to the criminal proceeds" of the conduct alleged in the Indictment (*id*. at 2).

A hearing on Defendant's motion was scheduled for February 27.[4]   On the eve of the hearing, the government filed supplemental papers that began to bring some of the relevant issues into focus.   Specifically, it advised:

> Although the affidavit refers to [the seized] funds as substitute assets, the facts contained in the affidavit evidence that they were in fact proceeds directly traceable to criminal activity.   In her motion, the defendant mischaracterizes the theory of fraud [] upon which the seizure warrant is based.   It was and remains the government's contention that back-dated trade lines were added to customers' credit reports in order to falsify their credit history and thereby boost their credit scores; once boosted by fraud, these credit scores were then used to obtain credit which would otherwise be unattainable.

---

[4]   On the same day that the hearing was scheduled, the Supreme Court issued its decision in *Kaley v. United States*, --- U.S. ----, ----, 134 S.Ct. 1090, 1095 (Feb. 25, 2014), addressing "the question whether an indicted defendant has a constitutional right to contest the grand jury's prior determination" of probable cause in a criminal forfeiture proceeding.   The Court held that, "[i]f the question in a pre-trial [post-indictment] forfeiture case is whether there is probable cause to think the defendant committed the crime alleged, then the answer is: whatever the grand jury decides." *Kaley*, 134 S.Ct. at 1105.   Thus, an indicted defendant, even where seized funds are needed to pay for counsel, has no right to challenge a grand jury's determination that the seized property would, upon conviction, be subject to forfeiture.

Here, if a grand jury had found probable cause to believe that the funds seized by the government were related to Defendant's illegal conduct set forth in an indictment, *Kaley* would have direct bearing on Defendant's right to contest that finding.   Because the funds relate to an investigation that has not yet been the subject of a grand jury indictment, however, it offers little guidance.

> Accordingly, it is not the government's theory of fraud that the individual customers were defrauded; rather, it was the banks who extended credit based on false credit histories who were the victims.

(ECF No. 153, at 2).[5]   The government asserted, for the first time, that "to the extent that [Defendant] challenges either (1) the probable cause contained in the seizure warrant affidavit, or (2) a delay in the return of a grand jury indictment charging her with crimes which relate directly to the 2011 seizures, she must litigate those issues in a civil proceeding before Magistrate Judge Schulze, and pursuant to a [Fed.R.Crim.P.] Rule 41(g) motion." (*Id.* at 5 (internal emphasis removed)).[6] Moreover, insofar as Defendant's claim to return of the funds was grounded in her Sixth Amendment right to counsel, the

---

[5] While it may be the government's "theory" that lenders who extended credit to customers of Able Estate and CJ Lending in reliance on Defendant's fraudulent transmission of credit data were the true victims, the warrant affidavit does not identify any such lender.

[6] Under Rule 41(g),

> [a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

government maintained that no such right could arise "before charges are brought, even if the defendant has an attorney on other charges and is the focus of a government investigation." (*Id.* at 5 n. 2 (citing *Brewer v. Williams*, 430 U.S. 387, 398 (1977)). If the court were to "exercise[] jurisdiction over assets seized pursuant to a valid, collateral warrant," the government argued, "it must ground its probable cause finding in th[e] affidavit and defer to Judge Schulze's prior determination on that point." (*Id.* at 7).

At the hearing on February 27, the government initially clarified that the March 2011 seizure warrant issued by Judge Schulze was criminal, rather than civil, in nature; that the Investigation was still ongoing;[7] and that while Defendant's business entities were involved to some extent in the conduct underlying both the Investigation and the Indictment, the seized funds were not being held to preserve assets for forfeiture in this case. The government asserted that the law essentially establishes three separate tracks for forfeiture proceedings: (1) a criminal, pre-charging track; (2) a criminal, post-charging track; and (3) a civil forfeiture track. According to

---

[7] Noting that the latest conduct alleged in the affidavit occurred in 2009, the court inquired as to whether any statute of limitations was implicated. The government answered in the negative, asserting that a ten-year statute of limitations was applicable. *See* 18 U.S.C. § 3293 (ten-year statute of limitations applicable where wire fraud "affects a financial institution").

the government, Defendant's motion falls in the criminal, pre-charging track and the only avenue for relief in that context is a motion pursuant to Rule 41(g).

Turning to the defense, the court inquired as to its view, given the government's clarifications, of available remedies. In apparent agreement with the government's position, counsel argued that Defendant was entitled to challenge the sufficiency of the seizure warrant in the same manner by which she would challenge an arrest warrant. The court asked whether a threshold showing was required, citing proposed findings and recommendations issued by United States Magistrate Judge Mary E. Stanley in *In re Search of Patient Records Located, on March 2, 2010, in a Safe at 35 West Third Ave., Williamson, West Virginia*, No. 2:10-mj-00037, 2010 WL 5211551, at *3 (S.D.W.Va. Nov. 17, 2010). Counsel asserted, in conclusory fashion, that to the extent a threshold showing was required Defendant had satisfied each of those factors. In response to the government's argument that Defendant's Sixth Amendment rights were not implicated because she had not yet been charged in the Investigation, her attorney agreed that the right to counsel did not arise pursuant to the Investigation, but argued that the seized assets are needed to pay her counsel of choice in the instant case, in which Defendant has been indicted and is entitled to Sixth Amendment protection.

As to the applicable legal standard, the government proffered that the procedure is roughly analogous to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 171 (1978), at which the defendant bears the burden of establishing that there were errors or material omissions in the underlying affidavit and probable cause determination. In the government's view, the court should review the warrant affidavit and determine, based on the four corners of that document, whether there is probable cause to believe that the seized assets are directly traceable to illegal activity and, if it finds probable cause lacking, it should be permitted an opportunity to supplement. When defense counsel advised that he needed to know whether to attack the sufficiency of the original warrant affidavit or an amended version, the government asserted that it was satisfied that the original affidavit, despite the language referencing substitute assets, was sufficient to establish probable cause for forfeiture of assets directly traceable to the alleged criminal conduct. Defendant sought permission to file a supplemental memorandum in light of the government's clarifications at the hearing, and that request was granted.

Defendant filed her supplemental memorandum on May 5. (ECF No. 188). Despite the fact that the stated purpose of this filing was to set forth a proposed framework and advance argument under Rule 41(g), her papers do not even mention that

provision.    Moreover,  Defendant's  memorandum  does  not  address
the  threshold  considerations  suggested  by  the  court  in  *In re
Search of Patient Records*,  nor  does  it  address  whether  her  Sixth
Amendment  right  to  counsel  pursuant  to  the  Indictment  has  any
bearing  on  her  right  to  the  return  of  property  held  pursuant  to
the  Investigation.    Instead,  Defendant  directly  attacks  the
sufficiency  of  the  affidavit  on  two  grounds.   First,  noting  that
the  government  now  contends  that  it  was  the  lenders  who  extended
credit  to  the  customers  of  Able  Estate  and  CJ  Lending  based  on
false  credit  histories  that  were  victimized  –  and  not  the
customers  themselves  –  Defendant  argues  that  the  affidavit  fails
to  support  the  government's  theory  of  wire  fraud  because  there
is  no  evidence  that  any  such  lender  was  actually  defrauded.    In
other  words,  she  contends,  because  the  affidavit  does  not
identify  any  lender  who  extended  credit  that  it  would  not  have
extended  if  a  customer's  credit  score  had  not  been  falsely
enhanced  by  Able  Estate  or  CJ  Lending,  probable  cause  to  issue
the  warrant  was  lacking.   Second,  Defendant  maintains  that  the
seized  property,  consisting  of  the  fees  paid  to  Able  Estate  and
CJ  Lending  by  their  customers,  was  not  the  alleged  tainted  money
and,  therefore,  is  not  directly  forfeitable,  as  the  government
now  suggests.    She  asserts,  without  any  supporting  authority,
that  "the  [c]ourt  could  order  that  all  of  the  funds  seized  in
2011  from  the  Able  Estate  accounts  immediately  be  released"  and

that, "[a]t a minimum, [it] should require that Special Agent Myett defend his warrant at an evidentiary hearing as required by *United States v. Farmer*, 274 F.3d 800, 804-05 (4th Cir. 2001), and its progeny." (*Id.* at 2).[8]

The sole legal authority cited by Defendant is *United States v. Bailey*, Crim. No. 1:11cr10, 2012 WL 569744 (W.D.N.C. Feb. 22, 2012), a case addressing the procedure for a third party challenge to a criminal forfeiture after a finding of guilt. Pursuant to Fed.R.Crim.P. 32.2(b)(1)(A), "after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted," the court "must determine whether the government has established the requisite nexus between the property and the offense" and "the amount of money that the defendant will be ordered to pay." In considering whether the "nexus" requirement was met in that case, the *Bailey* court set forth the legal standard as follows:

> [T]he Government bears the burden of proving nexus by a preponderance of the evidence. *United States v. Cherry*, 330 F.3d 658, 669-

---

[8] As support for her entitlement to a *Farmer* hearing, Defendant cites the government's "agree[ment]" – in its confused, initial response to the motion – that her "request for relief is appropriately considered under the [*United States v.*] *Jones*[, 160 F.3d 641 (10th Cir. 1998)]-*Farmer* line of cases[.]" (ECF No. 188, at 2 n. 2). This citation is curious in light of the fact that *Jones* and *Farmer* were in the same procedural posture as *Kaley* – in fact, they are expressly cited in *Kaley*, 134 S.Ct. at 1095 n. 4 – and defense counsel acknowledged at the hearing that this case, insofar as it pertains to uncharged conduct, is not in the same posture.

70 (4th Cir. 2003). "[W]here the government's theory is that the property was used to commit, or to facilitate the commission of, the offense of conviction, the government must establish that there was a substantial connection between the property to be forfeited and the offense." *United States v. Herder*, 594 F.3d 352, 364 (4th Cir.), *cert. denied*, 130 S.Ct. 3440, 177 L.Ed.2d 346 (2010). Where the Government's theory is that the property constitutes proceeds of the defendant's crimes, several courts, including courts in this Circuit, have applied the "but for" test first articulated by the Seventh Circuit in *United States v. Horak*, 833 F.2d 1235, 1242–43 (7th Cir. 1987). *See United States v. DeFries*, 129 F.3d 1293, 1313 (D.C.Cir. 1997); *United States v. Nicolo*, 597 F.Supp.2d 342, 346 (W.D.N.Y. 2009), *aff'd*, 421 F. App'x 57 (2d Cir. 2011); *United States v. Ivanchukov*, 405 F.Supp.2d 708, 712 (E.D.Va. 2005); *United States v. Benyo*, 384 F.Supp.2d 909, 914 (E.D.Va. 2005); *United States v. Farkas*, No. 1:10cr200 (LMB), 2011 WL 5101752, at *3 (E.D.Va. Oct. 26, 2011). Applying this test, property is considered proceeds and therefore deemed forfeitable if "a person would not have [the property] but for the criminal offense." *Nicolo*, 597 F.Supp.2d at 346; *Farkas*, 2011 WL 5101752, at *3.

*Bailey*, 2012 WL 569744, at *9. Defendant now suggests, in a footnote, that "[t]his 'but for' test requires the government to prove that the defendant would not have the property but for the criminal offense" (ECF No. 188, at 2 n. 2 (internal marks and citation omitted)), and argues that the warrant affidavit does not establish probable cause that the test is satisfied. She cites no authority, however, for the proposition that the procedure applicable to a final forfeiture order, after trial or

16

acceptance of a guilty plea, applies in the context of a challenge to a seizure warrant in an unindicted case, nor is the court aware of any.

The proper standard, as discussed at the motions hearing, is that described in *In re Patient Records*. Like the instant case, that case addressed a motion to return property seized pursuant to a warrant where no criminal case was pending. In finding that Rule 41(g) provided the appropriate framework, the court reasoned:

> Rule 41(g) motions are described as being "governed by equitable principles." *Richey v. Smith*, 515 F.2d 1239, 1243 (5th Cir. 1975); *Ramsden v. United States*, 2 F.3d 322, 324 (9th Cir. 1993); *Chaim v. United States*, 692 F.Supp.2d 461, 469 (D.N.J. 2010). Because of their nature as civil equitable proceedings, "a district court must exercise 'caution and restraint' before assuming jurisdiction." *Chaim*, *id*. (quoting *Kitty's East v. United States*, 905 F.2d 1367, 1370 (10th Cir. 1990)). In *Ramsden*, the Ninth Circuit listed the four factors set forth in *Richey* that a district court should consider in deciding whether to entertain a Rule 41 motion for return of property which is filed prior to the initiation of criminal proceedings.
>
> These factors include: 1) whether the Government displayed a callous disregard for the constitutional rights of the movant; 2) whether the movant has an individual interest in and need for the property he wants returned; 3) whether the movant would be irreparably injured by denying return of the property; and 4) whether the movant has

17

> an adequate remedy at law for the
> redress of his grievance.
>
> *Ramsden*, 2 F.3d at 325 (citing *Richey*, 515
> F.2d at 1243-44).

*In re Patient Records*, 2010 WL 5211551, at \*3; *see also In re Hoover's Residence, Lost Creek, Harrison Co., W. Va.*, No. 1:10-MJ-9, 2010 WL 7351761, at \*2 (N.D.W.Va. Dec. 30, 2010) ("while district courts have the power to hear pre-indictment return of property motions, the court must exercise caution and restraint before assuming jurisdiction"). Finding that none of those factors militated in the defendant's favor, the court concluded that the motion "should not be entertained further." *In re Patient Records*, 2010 WL 5211551, at \*6.

The same conclusion applies here. There is no indication in the record that the government callously disregarded Defendant's rights in seizing the assets. While there has been a substantial delay in bringing charges pursuant to the Investigation – which Defendant does not challenge – the record reflects that the government properly obtained a warrant, issued by a neutral fact finder, for the purpose of preserving assets for forfeiture after a conviction. *Cf. Ramsden*, 2 F.3d at 325 (finding that a warrantless seizure, where no exception applied, callously disregarded the defendant's constitutional rights). To the extent that Defendant was the sole member of Able Estate prior to its dissolution in 2011, she likely has an individual

18

interest in the seized funds, although it is unclear whether her interest is exclusive.   The declaration she submitted in support of her motion recites that, since the time of the seizure, she has "liquidate[d her] personal retirement account, . . . incur[red] large amounts of debt [] to cover ordinary living expenses," and has been unable to make payments on her mortgage and credit card debt.   (ECF No. 101-1, at 18-19).   In further support of the motion, Defendant's attorneys separately submitted letters, under seal, reflecting that she owes substantial amounts for their services.   (ECF Nos. 189, 190).[9]

---

[9] On a motion to seal, the burden is on the party seeking to restrict access to court records to establish that relief is warranted.   "[T]he common law presumes a right to access *all* judicial records and documents," which "can be rebutted if 'the public's right of access is outweighed by competing interests.'" *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013) (emphasis in original; quoting *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).   A document filed with the court constitutes a "judicial record" if it "play[s] a role in the adjudicative process, or [in the adjudication of] substantive rights."   *Id.; see also United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document.").

Here, the supplemental letters filed by Defendant potentially play a role in the adjudicative process insofar as they were submitted in support of her motion for return of property.   Thus, they are judicial records and the common law presumption of access attaches.   Presumably, certain financial aspects of representation could implicate the attorney-client relationship and its attendant privilege, which may constitute a countervailing interest sufficient to outweigh the public right of access.   *See Powers v. Braun*, Civ. No. ELH-13-01622, 2013 WL 6623193, at *2 (D.Md. Dec. 16, 2013) ("Courts generally accept a

Neither the declaration nor the supplemental letters set forth the financial arrangement between Defendant and her counsel or the work that has been performed to date, and they do not explain why the services of two experienced private attorneys, at separate firms, are necessary for her defense. Even assuming that these papers demonstrate a need for the seized funds to pay for legal representation in the instant case, moreover, it is uncertain whether she may properly rely on her Sixth Amendment right to counsel pursuant to the Indictment to justify the return of property seized pursuant to the Investigation. *See In re Chandler*, 270 F.R.D. 576, 578 (S.D.Cal. 2010) ("In the absence of criminal charges, the [S]ixth [A]mendment simply is not in play – and movants' [F]ifth [A]mendment rights must be evaluated in that light"). Defendant has also made no showing that she will be irreparably injured if the property is not returned, and the availability of an adequate remedy at law appears not to be relevant in this context. Considering that Defendant was permitted supplemental briefing to present her

---

claim of privilege as capable of overriding the presumption of public access and thereby justifying redaction of documents"). The information revealed in the brief letters submitted by defense counsel, however, does not appear to disclose any protected material, and counsel have provided no explanation as to why these documents should be sealed. Accordingly, these motions will be denied without prejudice. Counsel are directed either to withdraw the sealed documents or renew their motions to seal, setting forth sufficient justification, within fourteen days.

argument in the Rule 41(g) context, and chose not to do so, her failure to make a showing as to these factors carries added weight.

In any event, the court is not persuaded by Defendant's arguments on their merits. While it is true, as Defendant contends, that the warrant affidavit does not specifically identify any lender that extended credit in reliance on the alleged fraudulent information she transmitted, it was not required to do so. As the Fourth Circuit explained in *United States v. Wynn*, 684 F.3d 473, 477-78 (4th Cir. 2012):

> [T]o convict a person of mail fraud or wire fraud, the government must show that the defendant (1) devised or intended to devise a scheme to defraud and (2) used the mail or wire communications in furtherance of the scheme. *See United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012). And the element "to defraud" has "the common understanding of wronging one in his property rights by dishonest methods or schemes and usually signify[ing] the deprivation of something of value by trick, deceit, chicane, or overreaching." *Carpenter v. United States*, 484 U.S. 19, 27, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987) (internal quotation marks omitted); *see also United States v. Treadwell*, 593 F.3d 990, 996 (9th Cir. 2010) ("The common understanding of the verb 'to deprive' is to take away something, such as property, from another"). To establish a scheme to defraud, "the government must prove that the defendant[] acted with the specific intent to defraud." *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001) (emphasis added).

Thus, "[t]he crux of mail or wire fraud is the execution of a scheme to defraud, and the scheme need not be successful in order to constitute a crime[.]" *United States v. McNeil*, 45 Fed.Appx. 225, 228-29 (4th Cir. 2002) (citing *United States v. Bryan*, 58 F.3d 933, 943 (4th Cir. 1995), *abrogated on other grounds by United States v. O'Hagan*, 521 U.S. 642, 650 (1997)); *see also United States v. Bollin*, 264 F.3d 391, 407 (4th Cir. 2001) ("Government . . . was not required to prove that anyone had put up any money and had actually been defrauded in the wire fraud scheme (i.e., that the scheme succeeded), so long as the act of wire fraud was in furtherance of the scheme"). Here, the warrant affidavit supports that that Defendant and Parker, through the use of wire communications, reported false credit information to Experian for the purpose of fraudulently inducing lenders to extend credit to the customers of Able Estate and CJ Lending, from whom they received substantial fees in exchange. That is clearly a scheme to defraud, and the fact that no such lender is identified in the warrant affidavit is of no moment. *See United States v. Simpson*, Crim. No. 3:09-CR-249-D(06), 2011 WL 2880885, at *9 (N.D.Tex. July 15, 2011) (finding a victim of wire fraud "need not be named in the indictment . . . because the focus of the [wire] fraud statute is upon the use of [wire communications] to further a scheme to defraud, not upon any particular victim" (internal marks and citations omitted));

22

*Illinois v. Gates*, 462 U.S. 213, 235 (1983) ("[T]he *quanta* . . . of proof appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant" because "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause" (internal marks and citations omitted)).

Defendant further suggests that, under the government's revised theory of the case, the only property subject to forfeiture is the money that lenders paid, or the credit they extended, to the customers of CJ Lending or Able Estate in reliance on the fraudulent credit information. Pursuant to 21 U.S.C. § 853(a)(1), however, forfeitable property is "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [the illegal conduct]." Insofar as the affidavit evidences that CJ Lending and Able Estate offered no "credit repair" services other than reporting false credit information to Experian, the fees that the customers allegedly paid for those services was "property constituting . . . proceeds [that Defendant] obtained, directly or indirectly, as the result of [the alleged wire fraud]." In other words, "but for" the alleged illegal conduct, Defendant would not have possessed the seized funds. Thus, even if Defendant were able to meet the threshold factors, the warrant

23

affidavit establishes probable cause that the property would be directly forfeitable.

ACCORDINGLY, it is this 28th day of May, 2014, by the United States District Court for the District of Maryland, ORDERED that:

1.    Defendant's motion for return of property (ECF No. 100) BE, and the same hereby IS, DENIED;

2.    Defendant's motions to seal (ECF Nos. 189, 191) BE, and the same hereby ARE, DENIED WITHOUT PREJUDICE;

3.    Defendant will be permitted fourteen (14) days from the date of this Order to withdraw the sealed documents or to renew her motions to seal.  If she fails to do so within that time period, the documents will be unsealed; and

4.    The clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel for the parties.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge